UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                   :

MARSHALL ROSS,                    :

                                   :

                        Plaintiff,   :         15-CV-3286 (JPO)

               -v-                  :

                                   :         OPINION AND ORDER

THE STATE OF NEW YORK, *et al.*,     :

                                   :

                        Defendants. :
---------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

On April 29, 2015, Plaintiff Marshall Ross filed this *pro* se action against eleven Defendants: (1) the State of New York; (2) the City University of New York ("CUNY"); (3) Lehman College (the "College") (collectively, the "Institutional Defendants"); (4) Ricardo Fernandez; (5) Stefan Becker; (6) Dene Hurley; (7) Mary Rogan; (8) Orhan Kayaalp; (9) Eric Washington; (10) John Cirace; and (11) Robert Whittaker (collectively, the "Individual Defendants"). Ross alleges that Defendants discriminated and retaliated against him in violation of state and federal law. Defendants move to dismiss all of Ross's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). They also move to strike certain allegations in the Complaint pursuant to Federal Rule of Civil Procedure 12(f). For the reasons that follow, the motion to dismiss is granted in part and denied in part, and the motion to strike is denied.

## I.    Factual Background

Unless otherwise noted, the following facts are taken from the Complaint (Dkt. No. 1 ("Compl.")) and are assumed true for the purpose of this motion.

Ross formerly worked as a professor of accounting at Lehman College, which is part of the CUNY system. (Compl. ¶ 1, 7.) He was hired in 1994 and was granted a "Certificate of

Continuous Employment," which is similar to tenure, in 2003.  (*Id.*)   He was denied a promotion in 2005.  After being charged with a number of disciplinary infractions, Ross was "removed from payroll" on August 22, 2013.[1]  (Compl. ¶ 31.)  He was terminated, with retroactive effect to the Fall 2013 semester, on April 4, 2014.  (Dkt. No. 20-6 at 5-8.)   Ross alleges that Defendants discriminated and retaliated against him by pursuing disciplinary charges against him.

Three disciplinary proceedings are at issue in this case.  First, on August 16, 2011, the College charged Ross with incompetent or inefficient service, neglect of duty, and conduct unbecoming of a member of staff.  (Dkt. No. 21 ("Def.'s Mot.") at 4.)  The College brought these charges after Ross gave approximately 80 percent of his students C- or D grades and allegedly told his students that "he didn't see any accountants (in the class); all he sees is McDonalds [employees]."  (Dkt. No. 20-4 at 13; *see also* Compl. ¶ 40.)  On June 1, 2012, a hearing officer issued a decision sustaining the charges and suspending Ross for one semester without pay.  Ross's union, the Professional Staff Congress ("PSC"), appealed the decision, which triggered arbitration proceedings.  (Def.'s Mot. at 5.)  Ross did not pursue arbitration.  In his Complaint, Ross alleges that the disciplinary charges were unwarranted.  He appears to deny the statement

---

[1] The Court takes judicial notice of relevant disciplinary hearing decisions involving Ross, which are incorporated into the Complaint by reference.  (Dkt. Nos. 20-4, 20-5, 20-6.)  *See Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322-23 (2007) (noting that courts assessing Rule 12(b)(6) motions may consider documents incorporated into the complaint by reference and matters of which courts may take judicial notice); *see also Mohamad v. New York Univ.*, No. 14-CV-8373, 2015 WL 3387218, at *2 (S.D.N.Y. May 21, 2015) ("reconstruct[ing] the record" based on an arbitrator's decision where the complaint relied "heavily upon its terms and effect," and thus, "render[ed] the document integral to the complaint.") (citations and internal quotation marks omitted)), *adopted in full at* 2015 WL 5307391 (S.D.N.Y. Sept. 10, 2015); *Kempkes v. Marvin,* No. 07-CV-11351, 2008 WL 5330673, at *1 n.1 (taking "judicial notice of the complete record of the disciplinary proceeding against Plaintiff" in a First Amendment retaliation case).

about McDonald's, but also states that the "McDonald's remark is protected" by the First Amendment.  (Compl. ¶ 40.)

The College initiated a second set of charges against Ross on May 14, 2013.  (Dkt. No. 20-5 at 14.)  These charges arose from allegations that Ross had failed to participate in an online teaching program to which he had been reassigned after the first disciplinary proceeding.  The College also alleged that Ross had distributed sexually explicit materials to students— specifically, copies of an email he had sent to a College official, which listed his grievances against the College and described a "CUNY representative [who] indulg[ed] in reading kinky sex" (the "Hurley email").  (Dkt. No. 27 ("Pl.'s Opp.") at 2; *see also* Compl. ¶ 40.)  On April 3, 2014, a hearing officer found Ross guilty of incompetent and inefficient service and neglect of duty.  (Def.'s Mot. at 11.)  The PSC appealed the decision, triggering arbitration.  Ross again declined to arbitrate.  (*Id.*)

In his Complaint, Ross alleges that College employees refused to train him for the online program.  (Compl. ¶ 18.)  He asserts that, as a result of the delayed training, he had to work over the College's spring recess, which coincided with Passover.  (Compl. ¶ 20.)  When Ross objected to working during Passover, a College official allegedly told him that "if Easter is only one day, Passover cannot be seven days."  (Compl. ¶ 20.)

Ross also alleges that the College sent a professor to observe his class before the second disciplinary proceeding.  (Compl. ¶ 23.)  Ross believed that the professor was sent as part of a plot "to get rid of [him]," so he used a "spy video camera" to tape the class, as he had done on other occasions.  (Compl. ¶¶ 23-24.)  He then distributed the Hurley email to his students "to defend [him]self."  (Compl. ¶ 40.)  Ross alleges that, after he distributed the email, Hurley made an "anti-semitic remark" to him in the hallway.  (Compl. ¶ 25.)  He also appears to suggest that

3

disciplinary proceedings were an act of retaliation for a criminal complaint that his girlfriend filed against a College professor a decade earlier, in 2003. (Compl. ¶ 3.) Ross seeks a determination that the second set of charges reflects "a criminal conspiracy to get him fired without any justifiable cause." (Compl. ¶ 25.)

The College brought its third set of disciplinary charges against Ross on February 4, 2014. (Dkt. No. 20-6 at 6.) In that proceeding, College officials charged Ross with neglecting his duty by failing to report for work in the Fall 2013 semester without seeking a leave of absence. These charges led to a decision to terminate Ross, which the PSC appealed. (Def.'s Mot. at 13.) The appeal stayed implementation of the penalty and triggered arbitration, which Ross has not pursued.[2] (*Id.*)

Ross alleges that, at some point in the fall of 2013, he asked a PSC representative "to notify Lehman College that [he] wouldn't come back to the U.S. [from Israel] due to [his] being too heart-broken and grief-stricken" after his mother's death. (Compl. ¶ 40.) The Complaint states that Ross did not "apply for an official leave of absence" because "to expect [him to do so] when [he was] across the ocean and mentally paralyzed is to expect the impossible." (Compl. ¶ 40.) Ross seeks a determination that the final disciplinary charges are "malicious, false, and baseless." (Compl. ¶ 41.) He also seeks reinstatement and a court order requiring the College to promote him.

Based on the foregoing factual allegations, Ross asserts a number of claims for discrimination and retaliation. He appears to assert claims under: (1) Title VII of the Civil

---

[2] Ross seeks a stay of this action on the ground that arbitration proceedings related to the three sets of disciplinary charges against him are pending. (Dkt. No. 36.) Given that Ross has declined to arbitrate since March 13, 2013 (*see* Dkt. No. 37), that request is denied.

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (2) Title I of the Americans with

Disability Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"); (3) 42 U.S.C. § 1983 ("Section 1983");

(4) the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2612(a)(1)(D); (5) the New York

State Constitution; (6) New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* (the

"NYSHRL"); and (7) New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, *et seq.*

(the "NYCHRL").  He also appears to assert contract and tort claims under New York law.  Ross

brings these claims against the three Institutional Defendants and the eight Individual

Defendants, in both their official and individual capacities.

## II.    Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on

its face." *Wilson v. Merrill Lynch & Co*, *Inc.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  In determining whether

this standard is satisfied, courts assume that all "factual allegations contained in the complaint"

are true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (citation and internal quotation

mark omitted), and draw "all inferences in the light most favorable to the non-moving party[],"

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (citation omitted).  A complaint

"filed *pro se* is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded,

must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

III.     **Discussion**

Defendants move to dismiss most of Ross's claims on the ground that they are barred by the Eleventh Amendment.  They move to dismiss the remaining claims for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).

A.       **Eleventh Amendment**

As an initial matter, the Court concludes that Lehman College is not a proper party in this case.  Lehman College is a senior college within CUNY and has no separate legal existence.  *See Clissuras v. CUNY*, 359 F.3d 79, 81 & n.2 (2d Cir. 2004) (per curiam) (discussing the legal status of CUNY's senior colleges).  The claims against Lehman College are therefore dismissed.

Defendants argue that all claims against CUNY and the State of New York, except Ross's Title VII claim, are barred by the Eleventh Amendment.  The Eleventh Amendment prohibits lawsuits against states for money damages or injunctive relief unless the state has waived or Congress has abrogated the state's immunity.  *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001).  Eleventh Amendment immunity "extends beyond the state[ ] [itself] to state agents and state instrumentalities that are, effectively, arms of a state."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citation and internal quotation marks omitted).  "The Second Circuit has decisively held that CUNY and its colleges . . . are arms of the state which are immune from suit under the Eleventh Amendment."  *Soloviev v. Goldstein*. 104 F. Supp. 3d 232, 243 (E.D.N.Y. 2015) (citations, internal quotation marks, and alterations omitted).

Congress did not abrogate the states' immunity in enacting Section 1983, *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38 (2d Cir. 1977), Title I of the ADA, *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536-37 (S.D.N.Y. 2014) (Oetken, J.), or the self-care provision of the FMLA, *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327,

1334 (2012).  The Eleventh Amendment also bars claims against the state under the NYCHRL

and state law, including the state constitution, state common law, and the NYSHRL.  *Soloviev*,

104 F. Supp. 3d at 244 ("New York State has not consented to suit . . . for claims . . . arising

under state common law." (citations omitted)); *Quadir*, 39 F. Supp. 3d at 537-38 ("New York

has not waived its Eleventh Amendment immunity for NYSHRL suits in federal courts . . . . The

Eleventh Amendment likewise bars claims against the State of New York under the City law."

(citations and alterations omitted)); *see also Buckley v. New York*, 959 F. Supp. 282, 290-91

(E.D.N.Y. 2013).  Accordingly, all of Ross's claims against CUNY and the State of New York,

except his Title VII claim, are barred by the Eleventh Amendment.

       The Eleventh Amendment analysis proceeds differently for Ross's official capacity

claims.  "Under the well-known exception . . . set forth in *Ex parte Young*, 209 U.S. 123 (1908),

. . . a plaintiff may sue a state official acting in his official capacity—notwithstanding the

Eleventh Amendment—for prospective, injunctive relief from violations of federal law."  *State

Empls. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007).  Because this

exception applies only to federal claims, Ross cannot bring official capacity claims under state

and city law.  *Shibeshi v. CUNY*, 531 F. App'x 135, 135-36 (2d Cir. 2013) (citing *Pennhurst

State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("That claim is barred by the

Eleventh Amendment because [the plaintiff] sued under state law."); *Soloviev*, 104 F. Supp. 3d at

245 ("[T]he *Young* exception to the principle of sovereign immunity under the Eleventh

Amendment is inapplicable to claims . . . under city law brought against state officials."

(citations, internal quotations, and alterations omitted)).  Ross's state and city law claims against

the Individual Defendants in their official capacities are therefore dismissed.

Insofar as he seeks reinstatement rather than damages, Ross can assert ADA, Section 1983, and FMLA claims against the Individual Defendants in their official capacities.[3]  *Rowland*, 494 F.2d at 96. ("[C]laims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar.").  However, Ross can rely on *Ex parte Young* only if the officials he sues have "the authority to provide the requested relief." *Siani v. State Univ. of N.Y. at Farmingdale*, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014); *see also CSX Transp., Inc. v. N. Y. State Office of Real Prop. Serv.*, 306 F.3d 87, 98-99 (2d Cir. 2002).  In this case, the Individual Defendants are: (1) Ricardo Fernandez, the President of Lehman College; (2) Stefan Becker, the Associate Provost of Lehman College; (3) Dene Hurley, Chair of the Department of Economics and Business; (4) Mary Rogan, Special Counsel to the President; (5) Orhan Kayaalp, a retired CUNY employee; (6) Eric Washington, the Director of Human Resources; (7) John Cirace, a Professor of Economics; and (8) Robert Whittaker, a retired CUNY employee.  (Def.'s Mot. at 1.)  Ross has alleged, at most, that Fernandez, Becker, and Hurley may be in a position to grant him the reinstatement he seeks.  Accordingly, the FMLA,

---

[3] Because the *Ex parte Young* exception applies only to injunctive relief, *Rowland*, 494 F.3d at 95, Ross's ADA and Section 1983 claims for damages against the Individual Defendants in their official capacities are dismissed.  Ross can, however, bring an official capacity claim for reinstatement—which is prospective injunctive relief—under the ADA.  *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n.9 (2001).  He can also bring a Section 1983 claim for reinstatement based on alleged violations of the First Amendment.  *See Morin v. Tormey*, 626 F.3d 40, 41 (2d Cir. 2010) (assessing a First Amendment retaliation claim for reinstatement brought under Section 1983).  Finally, while the Second Circuit does not appear to have ruled on the issue, the Sixth Circuit has held that *Ex parte Young* applies to claims under the FMLA's self-care provision.  *Crugher v. Prelesnik*, 761 F.3d 610, 614-15 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 1176 (2015) (mem.); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 966 (6th Cir. 2013); *see also Serby v. New York City Dep't of Educ.*, 526 F. App'x 132, 133-34 (2d Cir. 2013) (discussing the self-care provision); *Santiago v. Dep't of Transp.*, 50 F. Supp. 3d 136, 151 n.18 (D. Conn. 2014) (same).  Nonetheless, for the reasons explained below, Ross's First Amendment and FMLA claims must be dismissed.

Section 1983, and ADA claims for reinstatement against the other Individual Defendants in their official capacities are dismissed. *See Soloviev*, 104 F. Supp. 3d at 245 (dismissing claims where the plaintiff failed to allege that individual defendants, including retired employees of CUNY, could grant him a reinstatement).

In light of this Eleventh Amendment analysis, the claims that remain are Ross's: (1) Title VII claim; (2) official capacity claims against Fernandez, Becker, and Hurley under Section 1983, the FMLA, and the ADA; and (3) claims against the Individual Defendants in their individual capacities, including claims under state and city law. The Court considers these claims in turn.

### B.    Title VII Claims

Title VII provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Ross appears to allege that Defendants violated Title VII by discriminating against him on the basis of his religion.[4]

To state a claim for employment discrimination under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "'[A]t the initial stage of the litigation' in a Title VII case, 'the plaintiff does not need substantial evidence of discriminatory

---

[4] While Ross also appears to assert that Defendants discriminated against him because he suffers from diabetes and had a foot injury, disability discrimination is not covered by Title VII. *Rich v. Associated Brands, Inc.* 379 F. App'x 78, 80 n.1 (2d Cir. 2010). Ross's disability discrimination claims under the ADA are addressed below.

intent.'" *Johnson v. Andy Frain Servs., Inc.*, No. 15-1143, 2016 WL 210098, at *1 (2d Cir. Jan. 19, 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "Rather, what must be plausibly supported by the facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* (citations and internal quotation marks omitted).

Ross alleges that his religion was a motivating factor in the College's decision to discipline him. To support this allegation, he states that a College official (1) required him to work over Passover and made disparaging remarks about the holiday when he refused, and (2) said to him that "Jewish people like to spy" before the College initiated the second set of disciplinary charges.[5]  (Compl. ¶ 25.)  Defendants respond to these allegations with a different account of the facts. They argue that Ross was not required to work over Passover; instead, he was assigned "seventeen deadlines spaced evenly across the semester, one which had to be met by March 29, 2013." (Def.'s Mot. at 21.)  Defendants contend that Ross "was given approximately two months' notice" to meet the relevant deadlines and was disciplined because "he failed to meet any of [them]," not simply the one that coincided with Passover. (*Id.*)  They also note that the disciplinary proceedings against Ross included charges stemming from his

---

[5] By itself, a "stray remark" cannot sustain a Title VII discrimination claim. *Carr v. North Shore-Long Island Jewish Sys.*, No. 14-CV-3257, 2015 WL 4603389, at *3 (E.D.N.Y. July 30, 2015) ("It is well-settled . . . that a single stray remark, without more, is insufficient to state a claim for discrimination."); *see also Inguanzo v. Housing & Servs., Inc.*, 621 F. App'x 91, 92 (2d Cir. 2015) (dismissing a "stray remark" as evidence of discriminatory intent); *De La Peña v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 413 (E.D.N.Y. 2013) (dismissing a Title VII claim where an allegedly discriminatory comment was "far removed in time" and "tangential . . . to the Plaintiff's ultimate discharge" (citing *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998)). Here, the Court considers the alleged remark in conjunction with Ross's other allegations.

decision to distribute a sexually explicit email to students and to tape students using a "spy video camera."  (*See* Compl. ¶ 23-24.)

If true, these allegations would undermine Ross's religious discrimination claim.  But it is inappropriate to consider disputes of fact at this stage.  In assessing the motion to dismiss, the Court must assume that all allegations in the Complaint are true and draw all inferences in favor of Ross, who is proceeding *pro se*.  *In re NYSE Specialists Sec. Litig.*, 503 F.3d at 95.  Given this pleading standard, and the Second Circuit's clear instruction that plaintiffs need only plead facts supporting a "minimal inference of discriminatory motivation" to survive a motion to dismiss, the Court concludes that Ross has stated a claim for discrimination based on religion.  *Vega*, 801 F.3d at 84 ("[O]ur decision in *Littlejohn* makes clear that a plaintiff is not required to plead a *prima facie* case . . . to defeat a motion to dismiss.")  Accordingly, the motion to dismiss Ross's Title VII claim is denied.[6]

C.      **ADA Claims**

"The ADA prohibits discrimination against a 'qualified individual on the basis of disability' in the 'terms, conditions, and privileges of employment.'"  *Kinneary v. City of New York*, 601 F.3d 151, 155-56 (2d Cir. 2010) (citing 42 U.S.C. § 12112(a)).  For the purpose of the ADA, disability discrimination includes both (1) taking adverse employment action against an employee on the basis of her disability and (2) refusing to make reasonable accommodations to

---

[6] Ross's Title VII claim survives only insofar as he sues his employer, CUNY.  *See Lima v. Addeco*, 634 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2009) (Chin, J.) (discussing the term "employer" in the context of Title VII).  To the extent that he asserts them, Ross's Title VII claims against the other Institutional Defendants are dismissed.  For reasons explained below, his individual capacity claims under Title VII must be dismissed as well.

enable an employee with a disability to perform the essential functions of her job.  *See* 42 U.S.C. § 12112(b)(1)-(7).

To state a disability discrimination claim based on adverse employment action, a plaintiff must allege facts giving rise to a plausible inference that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Kinneary*, 601 F.3d at 156 (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).  To state a claim arising from an employer's failure to accommodate, a plaintiff must show that: "(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) (quoting *Graves v. Finch Pruyn Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006)).

Ross alleges that a College official refused to deliver a textbook to his home when he had a foot injury.  He also alleges the College decided to pursue disciplinary charges against him, and to assign him to administrative duties rather than classroom teaching responsibilities, despite the fact that he suffers from diabetes and had "medical reports prohibiting [him] from doing any work besides in-class teaching."  (Compl. ¶¶ 27, 27, 40.)  These allegations can be construed as ADA claims for disability discrimination based on adverse employment action and failure to accommodate.

The adverse employment action claim must be dismissed because Ross does not allege any causal connection between the College's conduct and his disability. *Kinneary*, 601 F.3d at 156. Ross does not assert that the College brought disciplinary charges because he had diabetes, nor does he tie the disciplinary proceedings to his foot injury. Thus, even assuming that Ross "suffers from or is regarded as suffering from a disability within the meaning of the ADA," his adverse action claim fails. *Id.*

Ross has, however, stated a claim for failure to accommodate. Ross alleges that College officials knew that his doctor had prohibited him from doing any work other than in-class teaching "due to diabetic serious problems of controlling [his] blood sugar," but nonetheless denied his request to stay in the classroom. (Compl. ¶¶ 27, 37.) In response to this allegation, Defendants argue that Ross's request to remain in the classroom was unreasonable given his conduct, which included taping his students without their consent and distributing an explicit email. (Def.'s Mot. at 20.) This is an argument for summary judgment rather than dismissal under Rule 12(b)(6). While Ross's request to stay in the classroom may have been unreasonable, it is inappropriate to make such a determination at this stage. Assuming that Ross's allegations are true, and drawing all inferences in his favor, the Court concludes that Ross has stated an ADA claim.

### D.   Section 1983 Claims

Ross also appears to allege a First Amendment retaliation claim under Section 1983. Specifically, he asserts that the College brought disciplinary charges against him for distributing the Hurley email and for telling his students they "have an intelligence level of McDonald's employees" ("the McDonald's statement"). (Compl. ¶ 40.) Ross argues that both acts are "protected by the First Amendment (freedom of speech)." (*Id.*)

13

To state a First Amendment claim for retaliation, a public employee must allege facts showing that he suffered an adverse employment action and that his speech was "at least a substantial or motivating factor in the adverse employment action." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (citation, internal quotation marks, and alteration omitted). A plaintiff alleging retaliation must also show that he was (1) speaking on a matter of public concern and (2) "speaking as a citizen" rather than pursuant to his official duties. *See Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 201 (2d Cir. 2010) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006)); *Zelnik*, 464 F.3d at 225 (plaintiffs alleging retaliation must show that "the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest." (citation and internal quotation marks omitted)).

Neither the Hurley email nor the McDonald's statement constitutes protected speech. Ross describes the Hurley email as a lengthy statement of grievances related to his employment at the College. Such an email is "a purely private matter." *Sousa v. Roque*, 578 F.3d 164, 174 (2d Cir. 2009) ("[S]peech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." (quoting *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999))).

The McDonald's statement is not protected because Ross made it pursuant to his "official duties." *Weintraub*, 593 F.3d at 201. Whether a public employee's statements are protected by the First Amendment depends on whether the speech "owes its existence to [the employee's] professional responsibilities." *Weintraub*, 593 F.3d at 202 (quoting *Garcetti*, 547 U.S. at 421,

14

424.)  Ross's statements to his students owed their existence to his responsibilities as a College

professor.  Ross made the McDonald's statement "in furtherance of the execution of one of [his]

core duties," namely teaching in a classroom at Lehman College.  *Id.* at 203.  As such, the

McDonald's statement falls outside the First Amendment's ambit.

Ultimately, "while the First Amendment invests public employees with certain rights, it

does not empower them to 'constitutionalize the employee grievance.'" *Id.* at 201 (citing

*Garcetti*, 547 U.S. at 420 (2006)).  Ross aims to do just that.  His First Amendment claims

therefore must be dismissed.[7]

### E.      FMLA Claims

The FMLA's self-care provision entitles an eligible employee to twelve workweeks per

year of unpaid leave for "a serious health condition that makes the employee unable to perform

the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  A "serious health

condition" is "an illness, injury, impairment, or physical or mental condition that involves (A)

inpatient care in a hospital . . . or (B) continuing treatment by a health care provider."  29 U.S.C.

§ 2611(11).  It is unlawful for an "employer to interfere with, restrain, or deny the exercise of or

the attempt to exercise" an FMLA-protected right.  29 U.S.C. § 2615(a)(1); *see also* 29 C.F.R.

§ 825.220(c).

While the Complaint does not mention the FMLA, a liberal construction of Ross's

pleading suggests two potential FMLA self-care claims.  Ross appears to allege, first, that the

---

[7] Ross appears to invoke the First Amendment only with respect to the Hurley email and the
McDonald's statement.  However, to the extent that Ross alleges retaliation based on a complaint
filed against a College employee by his girlfriend in 2003, Ross has not pleaded facts that could
permit the inference that his girlfriend's actions were "a substantial or motivating factor" in
disciplinary proceedings against him in 2011.  *Zelnik*, 464 F.3d at 225 (citation and internal
quotation marks omitted).

College interfered with his right to self-care leave, and second, that the College retaliated against him for exercising that right by filing the third set of disciplinary charges.  "[T]he Second Circuit has yet to set forth a standard to apply to FMLA interference claims."  *Mendillo v. Prudential Ins. Co. of America*, No. 12-CV-1383, 2016 WL 146429, at *19 (D. Conn. Jan. 12, 2016) (citation and internal quotation marks omitted).  Nonetheless, "the weight of authority in the Circuit holds that in order to establish a prima facie [interference claim,] a plaintiff must show that: (1) [she] is an 'eligible employee' under the FMLA; (2) that the employer is an employer as defined in the FMLA; (3) that [she] was entitled to leave under the FMLA; (4) that [she] gave notice to the employer of [her] intention to take leave; [and] (5) that [she] was denied benefits to which [she] was entitled under the FMLA."  *Id.* (citation and internal quotation marks omitted). To establish a *prima facie* case of FMLA retaliation, a plaintiff must show that he exercised FMLA-protected rights, was qualified for his position, and suffered adverse employment action "under circumstances giving rise to an inference of retaliatory intent."  *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004); *see also Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 469 (S.D.N.Y. 2011).

Ross's FMLA claims must be plausible to survive a motion to dismiss.  *Smith*, 769 F. Supp. 2d at 269 ("[T]o state an FMLA retaliation claim, Plaintiff need only show that his claims are plausible under *Iqbal* and *Twombly* . . . ." (citations and alterations omitted)).[8]  Here, Ross

---

[8] While a plaintiff need not make out a *prima facie* case of FMLA retaliation to survive a motion to dismiss, *Smith*, 769 F. Supp. 2d at 469, some courts seem to require plaintiffs facing Rule 12(b)(6) motions to allege a *prima facie* case of FMLA interference.  *See, e.g.*, *Hill v. City of New York*, No. 13-CV-6147, 2015 WL 5719656, at *19 (E.D.N.Y. Sept. 28, 2015) (Chen, J.); *Stoler v. Inst. for Integrative Nutrition*, No. 13-CV-1275, 2013 WL 6068598, at *7-8 (S.D.N.Y. Nov. 18, 2013).  *But see Milne v. Navigant Consulting*, No. 08-CV-8964, 2010 WL 4456853, at *9 (S.D.N.Y. Oct. 27, 2010) (assessing an FMLA interference claim under the plausibility standard).  The Court concludes that Ross has failed to plead a plausible interference claim.

16

has not stated a claim under either theory of liability.  As to interference, Ross has not alleged

that he suffered from a "serious medical condition" as defined in the statute, 29 U.S.C.

§ 2611(11)(B), nor has he alleged a denial of leave.  Indeed, the Complaint affirmatively states

that Ross did not apply for an "official leave of absence" and did not notify the College of his

intention to be absent until he was already out of the country, at which point he asked an

associate to report that he "wouldn't come back to the U.S."  (Compl. ¶ 40.)  As to retaliation,

the factual allegations fail to establish that Ross was exercising an FMLA-protected right.  The

Complaint also lacks any factual support for an inference of discriminatory intent with respect to

the third set of disciplinary charges.

Ross thus fails to state an FMLA claim for retaliation or interference.  *See Higgins v.
NYP Holdings, Inc.*, 836 F. Supp. 2d 183, 194 (S.D.N.Y. 2011) (Engelmayer, J.) (dismissing an

FMLA interference claim where the plaintiff failed to establish the existence of a "serious health

condition" and "fail[ed] to satisfactorily allege either that he gave [his employer] notice of an

intention to take FMLA leave, or that any such request was denied"); *Milne v. Navigant

Consulting*, No. 08-CV-8964, 2010 WL 4456853, at *9 (S.D.N.Y. Oct. 27, 2010) (dismissing

interference and retaliation claims where plaintiff made "no factual allegations that either her . . .

condition involved inpatient care or continuing treatment" and failed to plead facts giving rise to

an inference of discriminatory intent); *Brown v. The Pension Bds.*, 488 F. Supp. 2d 395, 409

(S.D.N.Y. 2007) ("[A] spokesperson for the employee may give notice on her behalf 'only if the

employee is unable to do so personally.'" (quoting 29 C.F.R. § 825.303))  To the extent that he

asserts them, Ross's FMLA claims are dismissed.

### E.      Individual Capacity Claims

Ross brings a number of individual capacity claims against the Individual Defendants. He appears to allege individual capacity claims under: (1) Title VII; (2) the ADA; (3) Section 1983; (4) the FMLA; (5) the NYSHRL; (6) the NYCHRL; (7) the New York State Constitution; and (8) New York common law.  For the reasons discussed above, Ross has failed to allege violations of Section 1983 and the FMLA.  Accordingly, his individual capacity claims under those statutes are dismissed.

Ross's Title VII and ADA claims against the Individual Defendants are dismissed because there is no individual capacity liability under those statutes.  *Gindi v. Bennett*, No. 15-CV-6475, 2016 WL 398184, at *3 (E.D.N.Y. Feb. 1, 2016); *Rosenfeld v. Michael C. Fina, Inc.*, No. 13-CV-4762, 2015 WL 5772021, at *2 (S.D.N.Y. Sept. 29, 2015) ("[I]ndividuals are not subject to liability under Title VII." (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000)); *Parada v. Banco Indus. de Venezuela, C.A.*, 10-CV-0883, 2011 WL 519295 *4 (S.D.N.Y. Feb. 15, 2011), *rev'd on other grounds*, 753 F.3d 62 (2d Cir. 2014) ("Because courts routinely apply arguments regarding individual liability to Title VII and the ADA interchangeably, courts in this circuit have held that the definition of 'employer' in the ADA likewise excludes individual employee liability." (citations and internal quotation marks omitted)); *see also Turowski v. Triarc Co., Inc.*, 761 F. Supp. 2d 107, 108 (S.D.N.Y. 2011) ("[T]he ADA does not cover claims against individuals.").

Ross's NYSHRL and NYCHRL claims against the Individual Defendants fail because none of the Institutional Defendants can be subjected to suit.  To hold the Individual Defendants liable under the NYSHRL and NYCHRL, Ross must plead facts showing that those Defendants aided or abetted primary violations by his employer.  *Soloviev*, 104 F. Supp. 3d at 253; *see also*

18

*Ren Yuan Deng v. N.Y. State Office of Mental Health*, No. 13-CV-6801, 2015 WL 221046, at *5

(S.D.N.Y. Jan. 15, 2015) ("[A] predicate for aider and abettor liability under [NYSHRL] is

employer liability").  Ross's claims against his employer are barred by the Eleventh Amendment.

His theory of accessorial liability thus fails as well.

 Ross's claims under the New York Constitution must also be dismissed.  While Ross

does not identify which provision of the state constitution has been violated, a liberal

construction of his Complaint suggests that he asserts a free speech retaliation claim akin to his

First Amendment claim under Section 1983.  *See* New York Const. Art. I § 8.  "[W]hile the New

York Constitution generally affords greater protection than the federal constitution with regard to

speech, claims of free speech retaliation under the New York State Constitution are governed by

the same principles that apply under the Federal Constitution."  *Colandrea v. Town of*

*Orangetown*, 490 F. Supp. 2d 342, 351 (S.D.N.Y. 2007).  Thus, for the reasons already stated

with respect to Ross's First Amendment retaliation claim, Ross's state constitutional claim fails.

 Finally, Ross brings a number of individual capacity claims under New York common

law.  Ross asserts claims for negligence, harassment, falsification of tax records, and malicious

prosecution.  He also asserts a breach of contract claim based on his employer's alleged violation

of the terms of a collective bargaining agreement.

 As an initial matter, "New York does not recognize an independent cause of action for

'harassment.'"  *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 424 (E.D.N.Y. 2010).

Ross's harassment claim is therefore dismissed.

 Ross's breach of contract and negligence claims must be dismissed because they are

preempted.  His negligence claim is precluded by New York Workers' Compensation Law,

which provides the exclusive remedy for an employee's negligence claims against his employer.

*See Cohen v. Avande, Inc.*, 874 F. Supp. 2d 315, 327-28 (S.D.N.Y. 2012) (Furman, J.).  His

contract claim is precluded by § 301 of the Labor Management Relations Act ("LMRA"), 29

U.S.C. § 185(a), which preempts contract suits based on allegations that an employer violated

rights created by a collective bargaining agreement ("CBA").  *Avedisian v. Quinnipiac Univ.*,

387 F. App'x 59, 62 (2d Cir. 2010) ("Breach of contract claims founded directly on rights

created by collective-bargaining agreements, or substantially dependent upon analysis of the

terms of such agreements, are completely preempted by Section 301 . . . ." (citations and

alternations omitted)).  Ross alleges that CUNY violated the terms of his CBA by pursuing

disciplinary charges against him.  His contract claim is thus "completely preempted" by federal

law.  *Id.*

    As to falsification of tax records, Ross alleges that the College sent him pay stubs listing

inaccurate withholding amounts.  (Compl. ¶ 28.)  He reported this error to a College employee,

who "promised he would" fix the problem, but allegedly never did.  (*Id.*)  Ross asserts that the

failure to fix the paperwork error, which occurred in 2013, "was bound to cause the IRS and

New York State to demand from [him] tax money which [he had] already paid them."  (*Id.*)

    It is not clear from the face of the Complaint what legal claims Ross asserts on the basis

of the withholding error.  Construed liberally, the Complaint may be read as alleging a violation

of the CBA under § 301 of the LMRA, a claim for unpaid wages under the Fair Labor Standards

Act, 29 U.S.C. § 201 *et seq.*, and New York Labor Law § 190 *et seq.*, or a tort claim for

conversion under New York common law.  *See, e.g., Doo Nam Yang v. ACBL Corp.*, 427 F.

Supp. 2d 327, 341 (S.D.N.Y. 2005) (assessing a conversion claim where an employer allegedly

retained deductions from an employee's paychecks).  Whichever violation Ross alleges, he has

not stated a claim because he has not pleaded any facts indicating that the IRS or New York State

actually collected excess taxes from him.  To bring suit in federal court, a plaintiff must have

suffered an injury-in-fact.  *United States v. Windsor*, 133 S. Ct. 2675, 2685 (2013) (citing *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 559-62 (1992)).  Ross alleges that the withholding errors

were "bound to cause" excessive tax collection, but he does not state that he ever paid more taxes

than the law required.  Absent such an assertion, and factual allegations supporting that assertion,

any claim based on inaccurate withholding cannot survive the motion to dismiss.

      The final claim at issue in this suit is malicious prosecution.  To state a claim for

malicious prosecution under New York tort law, a plaintiff must plead facts showing: "(1) the

initiation of an action by the defendant . . . against the plaintiff, (2) begun with malice, (3)

without probable cause to believe it can succeed, (4) that ends in failure or, in other words,

terminates in favor of the plaintiff."  *Abshier v. Sunset Recordings, Inc.*, No. 14-CV-3227, 2015

WL 6913691, at *11 (S.D.N.Y. Nov. 6, 2015) (citation and internal quotation marks omitted).

Because the proceedings at issue did not terminate in Ross's favor, he has not adequately pleaded

a claim for malicious prosecution.  *Id.* at *12.  Ross's final claim is therefore dismissed.[9]

    **F.**    **Motion to Strike**

      Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading . . . any

. . . immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Defendants move to

strike certain allegations in the Complaint on the ground that they are scandalous and irrelevant.

(*See* Dkt. No. 20-15.)  Having reviewed the Complaint, the Court determines that it is not

necessary to alter Ross's pleading.  It is well settled that courts should deny motions to strike

---

[9] Defendants also argue that some of Ross's claims are time-barred and that others are subject to
the doctrine of issue preclusion.  In light of the foregoing analysis, the Court need not address
these argument for dismissal.

material from the pleadings "unless it can be shown that no evidence in support of the allegation would be admissible." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).  The Second Circuit has also clearly stated that courts "should not tamper with the pleadings unless there is a strong reason for doing so."  *Id.* (quoting *Lipsky,* 551 F.2d at 893).  Defendants have not established such a reason in this case.

IV.   **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  All of Ross's claims against all Defendants are hereby DISMISSED with the exception of (1) his Title VII claim against CUNY for religious discrimination and (2) his ADA claim for injunctive relief against Defendants Fernandez, Becker, and Hurley in their official capacities based on the alleged failure to accommodate his disability.  The motion to strike certain allegations from the Complaint is also DENIED.

The Clerk of Court is directed to close the motion at Docket Number 19.


SO ORDERED.


Dated: February 16, 2016
       New York, New York

_____
                 J. PAUL OETKEN
              United States District Judge


*COPY MAILED TO PRO SE PLAINTIFF*